# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JASON CROSS a/k/a<br>MIKEL KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 3:16-cv-1128** |
| v. | ) | **JURY DEMAND** |
| | ) | **JUDGE CRENSHAW** |
| KYLAN RODGERS, an individual, | ) | |
| DONNA TAYLOR, an individual, | ) | |
| SHANNON BASEMAN, an individual, | ) | |
| and JOHN AND/OR JANE DOES 1-10, | ) | |
| being an individual or individuals who | ) | |
| act as administrator(s) of the Facebook | ) | |
| page "Families Against Mikel Knight and | ) | |
| the MDRST" on which false and | ) | |
| defamatory statements were made, and | ) | |
| whose identity is unknown to the Plaintiff | ) | |
| at this time but who will be added by | ) | |
| amendment when ascertained. | ) | |
| | ) | |
| Defendants. | ) | |

---

## AMENDED COMPLAINT

---

This is an action for Libel, False Light, Intentional Interference with a Business Relationship, Negligence, Unfair Competition, and Tortious Interference with a Contract.

### PARTIES

1. Plaintiff Jason Cross a/k/a Mikel Knight is a citizen and resident of Mt. Juliet, Wilson County, Tennessee.

2. Defendant Kylan Rodgers (herein "Rodgers") is over the age of eighteen and a resident of Ringgold, Georgia with a primary residence at 195 Dodd Road, Ringgold, GA 30736.

1

3.   Upon information and belief, Defendant Shannon Baseman (herein "Baseman") is over the age of-nineteen and a citizen and resident of Crook County, Wyoming.

4.   Upon information and belief, Defendant Donna Taylor (herein "Taylor") is over the age of nineteen and a citizen and resident of Covington County, Alabama.

## JURISDICTION AND VENUE

5.   Defendant Rodgers has already availed himself of the forum by filing suit in Rodgers v. Cantrell et. al. in the Circuit Court of Davidson County, Tennessee case number 15C2192 and Rodgers v. Cantrell, et. al. in the United States District Court for the Middle District of Tennessee Nashville Division case number 3:15-cv-00788.

6.   Defendants Baseman and Taylor have already availed themselves of the forum by filing suit in Baseman and Taylor v. Hoskins, Cross, et al, in the Circuit Court of Davidson County, Tennessee case number 15C2301 which was removed to the United States District Court for the Middle District of Tennessee Nashville Division case number 3:15-cv-00789.

## STATEMENT OF FACTS

7.   Jason Cross, Stephanie Cross, 1203 Entertainment, LLC and MDRST Marketing/Promotions, LLC promoted the retail sale of Mikel Knight Country Rap compact disc recordings.

8.   Mikel Knight is the stage name of Jason Cross.

9.   The sale of Mikel Knight Country Rap compact disc recordings was accomplished by Stephanie Cross, Jason Cross, 1203 Entertainment LLC, and MDRST Marketing/Promotions, LLC by hiring persons to travel areas of the United States in vans and engage the general public in face to face sales of the compact discs.

Case 3:16-cv-01128   Document 14   Filed 11/09/16   Page 2 of 28 PageID #: 48

10. The group of persons hired to travel in the vans and engage the public are known as the "Maverick Dirt Road Street Team."

11. Defendant Kylan Rodgers and Danny Cantrell were members of the Maverick Dirt Road Street Team and were engaged in the sale of the compact discs.

12. On or about June 9, 2014, Defendant Kylan Rodgers was a passenger in a Chevy Express van driven by Cantrell in furtherance of the business interests of Cross, Knight, 1203 and MDRST.

13. The van was owned by Cross, Knight, 1203 and/or MDRST.

14. On said date, Cantrell was driving said van in which Defendant Rodgers was a passenger, headed east on State Road 44 near mile marker 22 in Dagget County, Utah.

15. Cantrell fell asleep at the wheel, crossed the center lane, ran off the road to the left, slid down an embankment, rolled onto the driver's side, and crashed into a tree.

16. Defendant Rodgers sustained significant injuries.

17. Shortly after the accident's occurred, Defendant Rodgers wrote a false and defamatory Facebook post, attached hereto as Exhibit A.

18. Plaintiff obtained counsel and served Defendant Rodgers with a cease and desist letter.

19. Defendant Rodgers refused to remove the post, and continues to post it on Facebook.

20. As a result of Defendant's actions, Plaintiff has been severely damaged. Plaintiff has received death threats, as well as had concerts cancelled due to statements made by the Defendant.

21. Plaintiff avers Defendants Baseman and Taylor have posted false and defamatory statements about Plaintiff, and additionally have knowledge as to whom the administrator(s) are of the Facebook page(s), "Public Awareness of Mikel Knight and The

Maverick Dirt Road Street Team", f/k/a/, "Families Against Mikel Knight and the MDRST".

## CAUSES OF ACTION

## COUNT I

### LIBEL
**(Defendant Rodgers)**

22. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

23. Libel is the written form of defamation. <u>Davis v. Tennessee</u>, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

24. A plaintiff must prove the following elements to establish a prima facie case of defamation:

    (a) A party published a statement,

    (b) With knowledge that the statement is false and defaming to the other; or

    (c) With reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. <u>Sullivan v. Baptist Mem'l Hosp.</u>, 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts §580B (1977)).

25. Defendant Rodgers published, or has knowledge of who published various defamatory statements. For purposes of defamation "publication" is defined as "the communication of defamatory matter to a third party." <u>Sullivan</u>, 995 S.W.3d at 571-572. The many online posts that Defendant Rodgers created or know who created received widespread dissemination to the public. All of the posts were readily available to anyone doing a quick online search.

4

26. A statement must be defamatory and false to expose the speaker or writer to liability for defamation. <u>Biltcliffe v. Hailey's Harbor, Inc</u>., 2005 Tenn. App. LEXIS 676, *10-11 (Tenn. Ct. App. Oct. 27, 2005). Determining whether a statement is capable of conveying defamatory meaning and whether the statement is false are distinct elements of the tort of defamation and must be considered separately." <u>Id</u>. at *11.

27. Several of Defendant Rodgers' statements made in online posts are defamatory. A statement or communication is defamatory "if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." <u>Biltcliffe</u>, LEXIS 676 at *10-11 (citing Restatement (Second) of Torts §614(1) (1977)).

    (1) "Would be woken up by Mikel Knight at 6:30 the next morning by him beating on your window and yelling at you to get out."

        i. This statement is defamatory. The statement made by Defendant implies that Plaintiff created a harsh, abusive work environment for his employees.

    (2) "Then he would cuss/yell at the guys that didn't do good the night before, telling them to get their numbers up or he'd slap the hell out of them, or something along those lines."

        i. This statement is defamatory. Defendant's statement asserts that Plaintiff would physically harm employees for not reaching a quota number. It also asserts an abusive work environment.

    (3) "But I remember going 10 days without a shower once, because our numbers weren't good enough."

i. This statement is defamatory. Defendant asserts that the reason he did not shower for 10 days was due to his team not meeting sales goals. He implies that Plaintiff created a harsh and abusive work environment.

(4) "I would cry, in starvation because we lived off $10 a day… some days $15 depending on our numbers."

i. This statement is defamatory. Defendant asserts that Plaintiff starved his team for not meeting sales goals. This implies a harsh and abusive work environment.

(5) "But I didn't even realize the brainwashing. His work ethics (sic) were so evil, the way he treated us was like we were slaves."

i. This statement is defamatory. Defendant asserts that Plaintiff treats his employees like "slaves," and asserts that Defendant has created a harsh and abusive work environment.

(6) "Mikel Knight would beat them or have someone else jump them when we'd meet up at night."

i. This statement is defamatory. Defendant asserts that Plaintiff physically harmed or induced others to physically harm other members of the group. This statement asserts a harsh and abusive work environment.

(7) "It could have been a miscalculation, or they could have stolen money, but Mikel Knight wasn't taking chances."

i. This statement is defamatory. This statement asserts that Plaintiff would physically attack a member of the group. This asserts a harsh and abusive work environment.

6

(8) "If someone's team wasn't making enough numbers, Mikel Knight would sometimes leave them in a town, sometimes without even their clothes, never paying them out."

    i. This statement is defamatory. Defendant asserts that if someone could not meet a sales goal, Plaintiff would abandon them. This statement implies a harsh and abusive work environment.

(9) "Mikel would start making us stay out later, sometimes until 2 AM, and even then after we started selling, we'd still have a 2-3 hour drive to where we were staying."

    i. This statement is defamatory. Defendant asserts that Plaintiff created an unsafe work environment.

(10)     "Mikel would never respond, it's been 3 weeks now… they won't send me my clothes, they won't send me my pay, won't even call to check on me to see how I'm doing."

    i. This statement is defamatory. Defendant implies that Plaintiff does not care about the welfare of his teams. The statement also implies that the Plaintiff will abandon member of the team that are in trouble.

(11)     "They wouldn't even give us insurance information, they were going to stick us with everything."

    i. This statement is defamatory. Defendant asserts that Plaintiff does not provide insurance for his employees and cuts all ties when an issue arises.

(12)     "This man is so crooked, he knew that hiring kids straight out of high school would be dumb enough to fall in love with the money, not knowing if that if their

7

(sic) was ever ANY legal problems, there was nothing we could do because we never signed anything saying 'hey, you're hired!'"

    i. This statement is defamatory. Defendant asserts that Plaintiff purposely circumvents the legal requirements of employment. The statement implies a harsh and abusive work environment.

(13)    "He leaves no paper trail, no proof that anyone works for him, and he never withheld taxes from anyone's pay."

    i. This statement is defamatory. Defendant asserts that Plaintiff has somehow purposefully circumvented the law.

(14)    "He basically influences young men to be a part of his crew, promising a big life, and living the dream. But he never legally hires anyone, pays cash under the table…"

    i. This statement is defamatory. Defendant again asserts that Plaintiff has circumvented the law.

(15)    "All the while, everyone is basically "volunteering" their time to sell his merchandise."

    i. This statement is defamatory. Defendant claims that Plaintiff does not pay his employees.

(16)    "Anyone involved in any type of incident that reflects on Mikel Knight, whether it be words said about his work ethics (sic), or an auto accident in one of his vans, he automatically cuts all ties with those involved, keeps their pay, throws away their belongings, and avoids all contact."

  i. This statement is defamatory.  Defendant claims that Plaintiff has somehow avoided the responsibility to pay his employees and avoids any problems.

(17) "Mikel Knight has screwed me, not only leaving me with all of these bills at the age of 19 and no pay or none of my clothes or anything, but leaving me in my position without a job or knowing where I'm going to go with the rest of my life."

  i. This statement is defamatory.  Defendant blames Plaintiff for things over which Plaintiff has no control.

(18) "They also advised me that 'Mikel Knight has broken every law in the book regarding TN employment laws, more than likely he doesn't have workers comp.  Guys like Mikel Knight care only about their self (sic) and no one else.'"

  i. This statement is defamatory.  Defendant claims that Plaintiff has broken the law.

(19) "He's a Texas gangster that hides his real name because of legal reasons back in Texas."

  i. This statement is defamatory.  Defendant claims that Plaintiff must hide because he has committed illegal acts.

(20) "And he has perfected a hustle with dumb and innocent young teenagers."

  i. This statement is defamatory.  Defendant implies that Plaintiff has taken advantage of his employees illegally.

(21) "I never realized why people that had been there the longest were getting fired, and it's because they started catching onto everything he was doing and he

9

was scared they could ruin things for him so he would get rid of them before they exposed of (sic) him."

    i. This statement is defamatory. Defendant implies that Plaintiff was participating in illegal acts and firing employees who knew.

(22)    "I can't tell you how many people's lives I've heard him threaten, including his manager, his employees, people high up in his 'company'."

    i. This statement is defamatory. Defendant claims that Plaintiff has threatened violence against his employees.

(23)    "He has cut me off, and I'm sure he will try to send someone to try to hurt or even kill me."

    i. This statement is defamatory. Defendant claims that Plaintiff would be willing to murder Plaintiff.

(24)    "He is evil and the way he has done me, along with many others, is WRONG."

    i. This statement is defamatory. Defendant claims that Plaintiff is an evil person who has mistreated his employees.

28. Defendants' defamatory statements, published in the Facebook posts, are false.

(1) "Would be woken up by Mikel Knight at 6:30 the next morning by him beating on your window and yelling at you to get out."

    i. This statement is false. Plaintiff did not beat on the van windows or yell at his employees.

(2) "Then he would cuss/yell at the guys that didn't do good the night before, telling them to get their numbers up or he'd slap the hell out of them, or something along those lines."

    i. This statement is false. Plaintiff never threatened to physically harm any of his employees.

(3) "But I remember going 10 days without a shower once, because our numbers weren't good enough."

    i. This statement is false. If Defendant did not shower for 10 days, it was not due to his failure to reach sales goals.

(4) "I would cry, in starvation because we lived off $10 a day… some days $15 depending on our numbers."

    i. This statement is false. If Defendant lived off of $10 a day, it was due to his own financial choices.

(5) "But I didn't even realize the brainwashing. His work ethics (sic) were so evil, the way he treated us was like we were slaves."

    i. This statement is false. Plaintiff treated his employees fairly and with respect. All employees were paid fair wages for the work they did.

(6) "Mikel Knight would beat them or have someone else jump them when we'd meet up at night."

    i. This statement is false. Plaintiff never beat an employee or had an employee "jump" another employee.

(7) "It could have been a miscalculation, or they could have stolen money, but Mikel Knight wasn't taking chances."

i. This statement is false. Plaintiff would never have someone beaten for theft of money.

(8) "If someone's team wasn't making enough numbers, Mikel Knight would sometimes leave them in a town, sometimes without even their clothes, never paying them out."

    i. This statement is false. Plaintiff never abandoned anyone in a town without their clothes and without paying them for not meeting their sales goals.

(9) "Mikel would start making us stay out later, sometimes until 2 AM, and even then after we started selling, we'd still have a 2-3 hour drive to where we were staying."

    i. This statement is false. Plaintiff did not make Defendant stay out later to meet sales goals.

(10)     "Mikel would never respond, it's been 3 weeks now… they won't send me my clothes, they won't send me my pay, won't even call to check on me to see how I'm doing."

    i. This statement is false. Plaintiff attempted to reach out to Defendant after the accident.

(11)     "They wouldn't even give us insurance information, they were going to stick us with everything."

    i. This statement is false. Plaintiff provided Defendant with the required insurance documentation.

(12)     "This man is so crooked, he knew that hiring kids straight out of high school would be dumb enough to fall in love with the money, not knowing if that if their

(sic) was ever ANY legal problems, there was nothing we could do because we never signed anything saying 'hey, you're hired!'"

    i. This statement is false. Plaintiff did not circumvent the law by not hiring anyone.

(13)    "He leaves no paper trail, no proof that anyone works for him, and he never withheld taxes from anyone's pay."

    i. This statement is false. Plaintiff did not circumvent employment laws and does keep records of employees.

(14)    "He basically influences young men to be a part of his crew, promising a big life, and living the dream. But he never legally hires anyone, pays cash under the table…"

    i. This statement is false. Payments to Plaintiff's employees were never "under the table" and all employees were legally hired.

(15)    "All the while, everyone is basically "volunteering" their time to sell his merchandise."

    i. This statement is false. Plaintiff's employees were never "volunteers."

(16)    "Anyone involved in any type of incident that reflects on Mikel Knight, whether it be words said about his work ethics (sic), or an auto accident in one of his vans, he automatically cuts all ties with those involved, keeps their pay, throws away their belongings, and avoids all contact."

    i. This statement is false. Plaintiff has always treated his employees fairly and has not kept employee pay or belongings.

(17) "Mikel Knight has screwed me, not only leaving me with all of these bills at the age of 19 and no pay or none of my clothes or anything, but leaving me in my position without a job or knowing where I'm going to go with the rest of my life."

    i. This statement is false. Plaintiff did not withhold Defendant's belongings or clothes, and has no decision making authority for Defendant's future.

(18) "They also advised me that 'Mikel Knight has broken every law in the book regarding TN employment laws, more than likely he doesn't have workers comp. Guys like Mikel Knight care only about their self (sic) and no one else.'"

    i. This statement is false. Plaintiff has not broken any laws.

(19) "He's a Texas gangster that hides his real name because of legal reasons back in Texas."

    i. This statement is false. Plaintiff is not a "Texas gangster" and uses a stage name in association with his musical acts.

(20) "And he has perfected a hustle with dumb and innocent young teenagers."

    i. This statement is false. Plaintiff does not take advantage of his employees.

(21) "I never realized why people that had been there the longest were getting fired, and it's because they started catching onto everything he was doing and he was scared they could ruin things for him so he would get rid of them before they exposed of (sic) him."

    i. This statement is false. Plaintiff never terminated any employee's employment because of knowledge of illegal activities, there were no illegal activities.

(22)    "I can't tell you how many people's lives I've heard him threaten, including his manager, his employees, people high up in his 'company'."

    i. This statement is false. Plaintiff has not threatened the lives of the people he works with or who work for him.

(23)    "He has cut me off, and I'm sure he will try to send someone to try to hurt or even kill me."

    i. This statement is false. Plaintiff has not and would not send someone to hurt or kill Defendant.

(24)    "He is evil and the way he has done me, along with many others, is WRONG."

    i. This statement is false. Plaintiff is not evil and has treated his employees with respect.

29. When Defendant Rodgers published the Facebook post, Defendant Rodgers acted in reckless disregard for the truth of the statement or, alternatively, with negligence in failing to ascertain the truth of the statement.

30. As specified below, Plaintiff was injured by Defendant Rodgers' Facebook posts.

<u>**COUNT I**</u>

<u>**LIBEL**</u>
**(Defendants Baseman and Taylor)**

31. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

32. Libel is the written form of defamation. <u>Davis v. Tennessee</u>, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

33. A plaintiff must prove the following elements to establish a prima facie case of defamation:

(d) A party published a statement,

(e) With knowledge that the statement is false and defaming to the other; or

(f) With reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. <u>Sullivan v. Baptist Mem'l Hosp</u>., 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts §580B (1977)).

34. Defendants published, or have knowledge of who published various defamatory statements. For purposes of defamation "publication" is defined as "the communication of defamatory matter to a third party." <u>Sullivan</u>, 995 S.W.3d at 571-572. The many online posts that Defendants created or know who created, or have shared, received widespread dissemination to the public. All of the posts were readily available to anyone doing a quick online search.

35. A statement must be defamatory and false to expose the speaker or writer to liability for defamation. <u>Biltcliffe v. Hailey's Harbor, Inc</u>., 2005 Tenn. App. LEXIS 676, *10-11 (Tenn. Ct. App. Oct. 27, 2005). Determining whether a statement is capable of conveying defamatory meaning and whether the statement is false are distinct elements of the tort of defamation and must be considered separately." <u>Id</u>. at *11.

36. Several of Defendants' statements made in online posts and links to associated sites are defamatory. A statement or communication is defamatory "if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." <u>Biltcliffe</u>, LEXIS 676 at *10-11 (citing Restatement (Second) of Torts §614(1) (1977)).

(1) "If You See Mikel Knight Buses in Utica/Rome Stay Away."

16

          i.   This statement is defamatory.  The statement made by Defendants clearly intends to harm the reputation of Plaintiff by deterring persons to stay away and not associate with Plaintiff or Plaintiff's business.

37.   Defendants' defamatory statements, published in the Facebook posts, are false.

      (1)  "BEWARE of Mikel Knight's Maverick Dirt Road Street Team…My son is now sitting in jail in Monroe, GA because of this Con Artist."

          i.   This statement is false.  Plaintiff is not a Con Artist. Plaintiff is a Country Music – Hip-Hop artist.

38.   When Defendants published the aforementioned Facebook post, Defendant acted in reckless disregard for the truth of the statement or, alternatively, with negligence in failing to ascertain the truth of the statement.

39.   As specified below, Plaintiff was injured by Defendants Facebook posts.

## COUNT III

## FALSE LIGHT INVASION OF PRIVACY

### (Defendant Rodgers)

40.   Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

41.   The Tennessee Supreme Court has adopted the definition of false light invasion of privacy found in §652E of the Restatement (Second) of Torts:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

      (a) The false light in which the other was placed would be highly offensive to a reasonable person, and

> (b) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."
>
> Eisenstein v. WTVF-TV, News Channel 5 Network, LLC, 389 S.W.3d 313, 318 (Tenn. Ct. App. 2012) (citing Restatement (Second) of Torts §652E (1977))."

42. Defendant Rodgers wrote a long Facebook post about Plaintiff and Plaintiff's business.

43. The statements made in the Facebook post place Plaintiff in a false light that would be highly offensive to a reasonable person.

44. Defendant Rodgers acted in reckless disregard as to the falsity of the statements he posted.

45. As a result of Defendant's reckless acts, Plaintiff's reputation and his business have been repeatedly damaged.

## COUNT III

## FALSE LIGHT INVASION OF PRIVACY

### (Defendants Baseman and Taylor)

46. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

47. The Tennessee Supreme Court has adopted the definition of false light invasion of privacy found in §652E of the Restatement (Second) of Torts:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

> (a) The false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

18

(Tenn. Ct. App. 2012) (citing Restatement (Second) of Torts §652E (1977)).”

48. Defendants Baseman and Taylor are administrators, or have knowledge of who the administrators are of the Facebook page, “Public Awareness of Mikel Knight and The Maverick Dirt Road Street Team” which continues to post false and defamatory statements and links to other sites posting defamatory statements about Plaintiff and Plaintiff's business.

49. The statements made within the Facebook page, “Public Awareness of Mikel Knight and The Maverick Dirt Road Street Team” place Plaintiff in a false light that would be highly offensive to a reasonable person.

50. Defendants Baseman and Taylor acted in reckless disregard as to the falsity of the statements posted.

51. As a result of Defendant's reckless acts, Plaintiff's reputation and his business have been repeatedly damaged.

## COUNT IV

## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

52. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

53. The Tennessee Supreme Court expressly adopted the tort of Intentional Interference with Business Relationships in Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691 (Tenn. 2002).

54. In order to show intentional interference with business relationships, a plaintiff must show:

(1) "An existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;

(2) The defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general;

(3) The defendant's intent to cause the breach or termination of the business relationship;

(4) The defendant's improper motive or improper means; and finally,

(5) Damages resulting from the tortious interference." Id. at 701.

55. The Tennessee Supreme Court adopted the discussion in §766B comment c of the Restatement (Second) of Torts which states:

> "The relations protected against intentional interference by the rule stated in this Section include any contractual relations…if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with …the opportunity of selling or buying land or chattels or services… Also included is interference with a continuing business or other customary relationship not amounting to a formal contract." Trau-Med at Footnote 4.

56. The Court also acknowledged the difficulty in showing improper motive and improper means, clarifying by stating that the plaintiff must "demonstrate that the defendant's predominant purpose was to injure the plaintiff." Id. at Footnote 5.

57. Defendant Rodgers marketed and sold CDs for Plaintiff for almost one (1) year.

58. Defendant Rodgers had a strong knowledge of Plaintiff's business model and marketing strategies.

59. Defendant Rodgers knew that a prospective relationship existed between Plaintiff and the class of people who might be interested in purchasing a country rap CD.

60. Defendant Rodgers knew of the prospective relationship between Plaintiff and purchasers.

61. Clearly, the Defendant Rodgers intended to cause the termination of the business relationship through his false and defamatory posts about Plaintiff.

62. Defendant Rodgers made the Facebook posts expressly to damage Plaintiff's prospective business relationships and to damage him in pending litigation in an attempt to force Plaintiff to settle.

63. By posting outrageously false and defamatory statements to Facebook, Defendant Rodgers clearly shows improper motive for his actions.

64. Due to Defendant Rodgers' false and defamatory statements, Plaintiff's business has been substantially damaged.

65. As specified below, the actions of Defendant Rodgers have caused injury to Plaintiff.

## COUNT V

## NEGLIGENCE

66. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

67. In order to prevail on a negligence claim, a plaintiff must establish:

    (1) "a duty of care owed by the defendant to the plaintiff;

    (2) Conduct by the defendant falling below the standard of care amounting to a breach of that duty;

    (3) An injury or loss;

    (4) Causation in fact; and

    (5) Proximate or legal cause." Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 355 (Tenn. 2008).

68. Defendant Rodgers worked with Plaintiff for almost one (1) year.

69. Because of Defendant Rodgers' knowledge of Plaintiff's business, Defendant Rodgers owed a duty of care to Plaintiff to not disseminate false and defamatory statements.

70. By posting false and defamatory statements to Facebook, Defendant Rodgers' actions fell below the duty of care he owed to Plaintiff.

71. Plaintiff's business was catastrophically damaged by the Facebook posts.

72. Defendant Rodgers' actions were the direct cause of the damage to Plaintiff's business.

73. The damage done to Plaintiff's business is a clearly foreseeable consequence of Defendant Rodgers' actions.

74. As specified below, the actions of Defendant Rodgers have caused injury to Plaintiff.

## COUNT VI

## UNFAIR COMPETITION

75. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

76. The Tennessee Supreme Court defined a claim for Unfair Competition in B & L Corp. v. Thomas and Thorngren, Inc., 162 S.W.3d. 189, 216 (Tenn. 2004).

> "[U]nfair competition, or for that matter other interferences with prospects, can be found when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives the plaintiff of customers or other prospects. **Liability for such losses may be imposed from defamation, disparagement, intimidation or harassment of the plaintiff's customers or employees.**" Quoting Prosser and Keaton on the Law of Torts §130 at 1013 (5th ed. 1984). (emphasis added).

77. Defendant Rodgers worked with Plaintiff for almost one (1) year.

78. Both Plaintiff and Defendant Rodgers are musicians within the country music genre.

79. Defendant Rodgers has committed several torts against Plaintiff, including libel, false light invasion of privacy, intentional interference with a business relationship, and negligence.

22

80. These torts form the basis for the tort of unfair competition.

81. Defendant Rodgers knew, or should have known that by posting his comments to Facebook, Plaintiff's business would be harmed.

82. Defendant Rodgers' actions have deprived Plaintiff of customers and other prospects.

83. As specified below, the actions of Defendant Rodgers have caused injury to Plaintiff.

<u>COUNT VII</u>

<u>TORTIOUS INTERFERENCE WITH A CONTRACT</u>

84. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

85. A claim of tortious interference with a contract requires the plaintiff to show seven elements:

> (1) "There must be a legal contract.
>
> (2) The wrongdoer must have knowledge of the existence of the contract.
>
> (3) There must be an intention to induce this breach.
>
> (4) The wrongdoer must have acted maliciously.
>
> (5) There must be a breach of the contract.
>
> (6) The act complained of must be the proximate cause of the breach of the contract.
>
> (7) There must have been damages resulting from the breach of the contract." <u>Buddy Lee Attractions, Inc. v. William Morris Agency, Inc</u>., 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999).

86. Defendant Rodgers worked with Plaintiff for almost one (1).

87. During the time that Defendant Rodgers worked with Plaintiff, Plaintiff was in contract negotiations with two (2) separate entities, SoundScan and the Dallas Cowboys Football Team.

88. Defendant Rodgers knew of these contract negotiations and their imminent agreement.

89. By making false and defamatory statements on Facebook, Defendant Rodgers intended to damage Plaintiff and induce the other parties to breach the contract.

90. Defendant Rodgers' actions were clearly done with malicious intent.

91. After seeing Defendant Rodgers' statements and subsequent Facebook posts, both SoundScan and the Dallas Cowboys chose not to fulfill the contracts.

92. Had Defendant Rodgers not made the false and defamatory statements on Facebook, the contracts would not have been breached.

93. As a result of the breaches, Plaintiff's business was severely damaged.

94. As specified below, the actions of Defendant Rodgers have caused injury to Plaintiff.

<u>**COUNT VIII**</u>

<u>**CIVIL CONSPIRACY**</u>

95. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

96. The elements necessary to establish a claim for civil conspiracy are: "(l) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." Kincaid v. SouthTrustBank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).

97. There was a clear and common design between Rodgers, Baseman, Taylor and Doe Defendants to post false and defamatory statements about Plaintiff to cause him and his business harm.

98. There was a concerted action accomplished by unlawful libelous statements being posted and shared almost daily on Facebook as already pled within this Amended Complaint.

99. An overt act need not be committed by each and every conspirator; an overt act by one conspirator solidifies the offense for all coconspirators. Thus, a conspirator who does not participate in the overt act can be charged with conspiracy.

100. Defendants' actions are clearly overt in that they are easily seen and recognizable in that they are false and defamatory posts on Facebook. This is a clear furtherance of the conspiracy.

101. As a direct and proximate result of these actions, Plaintiff's business relationships with SoundScan and The Dallas Cowboys Football Team were not fulfilled and ultimately Plaintiff lost opportunities with both entities as further detailed above.

102. As a direct and proximate result of these actions, Plaintiff has, and continues to suffer catastrophic economic damages to his business as a Country Music – Hip-Hop artist.

103. As a direct and proximate result of these actions, Plaintiff has suffered damages to his business and personal reputation in the music and entertainment industry.

## COUNT VIII

## PUNITIVE DAMAGES

104. Plaintiff incorporates Paragraphs 1 through 21 above as if each has been fully restated herein.

25

105. The actions of Defendants were malicious, wanton, reckless, and willful including but not limited to publishing and sharing false and defamatory statements on Facebook.

106. Defendants published their statements and shared other site's posts on Facebook with reckless disregard to their veracity or truth.

107. Due to Defendants reckless statements, Plaintiff's business and career were seriously injured.

108. As specified below, the actions of Defendants have caused injury to Plaintiff.

## DAMAGES

109. As a direct and proximate result of Defendants actions, Plaintiff has suffered substantial damage to his career and business.

110. Plaintiff has lost album sales.

111. Plaintiff has lost the ability to promote himself and his music.

112. Because the statements made by Defendants forced SoundScan to back out of a contract, Plaintiff has lost the ability to be included in the music sales charts.

113. Plaintiff has lost the chance to perform for the Dallas Cowboys Football Team.

114. Plaintiff has lost the ability to market his music across the country for fear of being attacked due to Defendants false and defamatory statements.

115. Plaintiff has had employees confronted, physically threatened, and forced out of towns while on tour, due to Defendants false and defamatory statements, causing Plaintiff to lose business.

116. Plaintiff has been personally threatened with violence which has caused him to lose sleep and be in constant fear that he might be physically harmed while touring.

117. Due to Defendants false and defamatory statements, Plaintiff has lost radio advertising, damaging his ability to publicize or advertise his music.

118. Due to Defendants false and defamatory statements, Plaintiff has lost the chance to perform at multiple venues, damaging his ability to publicize and sell his music.

## **PRAYERS**

**WHEREFORE**, Plaintiff Jason Cross prays:

1. That this Court enter judgment in their favor on all counts of this Amended Complaint;

2. That this Court award Plaintiff damages in an amount consistent with the evidence produced at trial, in an amount no less than one million thousand (1,000,000) dollars;

3. That this Court further award Plaintiff punitive damages upon an evidentiary showing of entitlement to the same;

4. That Plaintiff be entitled to amend his Complaint to include additional damages based upon continued investigation and discovery;

5. For a temporary and permanent injunction enjoining Defendants from continued publication of the Facebook posts and pages, on the internet or via any other media, including the removal of any posts from Facebook.

6. For a permanent injunction requiring Defendants to publish a retraction of the Facebook posts and pages in regards to his statements about Plaintiff's business.

7. For a permanent injunction requiring Defendants to publish an apology to Facebook and the various web pages in which he placed his post, for making false and defamatory statements about Plaintiff.

8. Any other and further relief as the Court deems just and proper.

[SIGNATURE PAGE TO FOLLOW]

Respectfully Submitted,

/s/ Todd G. Cole _____
TODD G. COLE, BPR No. 31078
*Attorney for Plaintiff*
Cole Law Group
750 Old Hickory Blvd.
Building Two, Suite 202
Brentwood, TN 37027
Phone: (615) 490-6020
Fax: (615) 942-5914
tcole@colelawgrouppc.com