# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JASON CROSS, a/k/a <br> MIKEL KNIGHT, <br><br> Plaintiff, <br><br> v. <br><br> KYLAN RODGERS, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )     NO. 3:16-cv-01128 <br> )     CHIEF JUDGE CRENSHAW <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Pending before the Court are three Motions to Dismiss for Lack of Personal Jurisdiction, filed by Defendant Baseman (Doc. No. 27); by Defendant Taylor (Doc. No. 31)[1]; and by Defendant Rodgers (Doc. No. 36).

### INTRODUCTION

Jason Cross a/k/a as Mikel Knight ("Cross") is a country rap artist who promotes his compact disc recordings by hiring persons to travel across the United States in vans and engage the general public in face-to-face sales of the compact discs. This group of traveling salespeople is known as the Maverick Dirt Road Street Team ("MDRST"). Rodgers was a member of the MDRST. On June 9, 2014, while in Utah, Rodgers was a passenger in a van driven by another MDRST member who fell asleep while driving and crashed the van, causing significant injuries to Rodgers. Cross alleges that shortly after the crash, Rodgers wrote a false and defamatory Facebook post about Cross. Cross also alleges that Baseman and Taylor have posted false and defamatory statements on Facebook

---

[1] Doc. No. 34 is an additional copy of the Motion to Dismiss filed by Defendant Taylor at Doc. No. 31. The Clerk is directed to term the Motion filed at Doc. No. 34.

about Cross. Baseman and Taylor are the mothers of two MDRST members who were killed in a different crash, on June 16, 2014, in Texas, while working for Cross.

In this diversity action, Cross has sued Rodgers, Taylor and Baseman for libel, false light invasion of privacy, and civil conspiracy. Cross has also sued Rodgers for intentional interference with a business relationship, negligence, unfair competition and tortious interference with a contract. (Doc. No. 14.) Cross alleges that this Court has personal jurisdiction over Rodgers, Taylor and Baseman because each of them has availed himself or herself of this forum by filing other actions in this court. Those other actions are Rodgers v. Cantrell, et al., Case No. 3:15-cv-00788, and Baseman and Taylor v. Hoskins, Cross, et al., Case No. 3:15-cv-00789, and they are personal injury and wrongful death actions, respectively, arising from the vehicle crashes described above. Rodgers, Baseman and Taylor have each filed a Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that none of them has the required minimum contacts with the State of Tennessee to permit personal jurisdiction over them in this action.

## MOTIONS TO DISMISS - PERSONAL JURISDICTION

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction. Beydoun v. Wataniya Restaurants Holding, 768 F.3d 499, 504 (6th Cir. 2014).[2] When, as here, the Court rules on a jurisdictional motion to dismiss without conducting an evidentiary hearing, the Court must

---

[2] The Tennessee Supreme Court has held that the factual allegations of a plaintiff's complaint must establish sufficient contacts between the defendant and this state with reasonable particularity. First Community Bank, N.A. v. First Tennessee Bank, N.A., 489 F.3d 369, 383 (Tenn. 2015).

consider the pleadings and affidavits in a light most favorable to the plaintiff. Id. To defeat such a motion to dismiss, the plaintiff need only make a *prima facie* showing of jurisdiction. Id.

In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists. Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012). Personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process. Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). Tennessee's long-arm statute has been interpreted to extend the limits of personal jurisdiction to those imposed by the Due Process Clause, so the jurisdictional limits of Tennessee law and of federal constitutional law of due process are the same. Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005).

When determining whether a district court's exercise of personal jurisdiction would offend due process, the relevant inquiry is whether the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. Beydoun, 768 F.3d at 505. The Sixth Circuit has articulated a three-part test to guide this determination. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Schneider v. Hardesty, 669 F.3d 693, 701 (6th Cir. 2012).

A defendant's relationship with a state must arise out of contacts that the defendant himself created with the forum state. Walden v. Fiore, 134 S.Ct. 1115, 1122 (2014). The court's analysis

3

looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. Id. Because the requirement of personal jurisdiction flows from the Due Process Clause and functions to protect an individual liberty interest, that right can, like other such rights, be waived. Turner v. Turner, 473 S.W.3d 257, 270 (Tenn. 2015); Gerber v. Riordan, 649 F.3d 514, 518 (6th Cir. 2011).Cross alleges that Rodgers, Baseman and Taylor purposely availed themselves of the privilege of acting in this forum by filing suit here. It is undisputed that each of the Defendants filed an action in Tennessee against Cross and others for the injuries and/or deaths of three MDRST members.

The second element of the three-part test requires, however, that the cause of action arise from Defendants' activities in this forum. This element is disputed. Even if a defendant purposefully avails himself of the benefits of doing business in a forum, the exercise of personal jurisdiction complies with due process only if the cause of action has a substantial connection to the defendant's in-state activities. Community Trust Bancorp., Inc. v. Community Trust Financial Corp., 692 F.3d 469, 472 (6th Cir. 2012). Specific jurisdiction[3] exists when a defendant has minimum contacts with the forum state and the cause of action arises out of those contacts. State of Tenn. v. NV Sumatra Tobacco Trading Co., 403 S.W.3d 726, 744 (Tenn. 2013).

(A) Prior Actions in this Court

Thus, the first issue for the Court is whether this action arose out of or has a substantial connection to the personal injury and wrongful death actions filed by Defendants in Tennessee. This issue is relevant to both the second element of "minimum contacts" and Cross's argument that

---

[3] There are two types of personal jurisdiction, general and specific. Sumatra Tobacco, 403 S.W.3d at 744. Plaintiff does not assert that Defendants are subject to this Court's general jurisdiction.

4

Defendants have waived their personal jurisdiction defense or have consented to personal jurisdiction in this Court. The parties agree that one can waive personal jurisdiction in a lawsuit by filing another lawsuit if both suits involve the "same nucleus of operative facts" or the "same transactional core." Marron v. Whitney Group, 662 F.Supp.2d 198, 200 (D. Mass. 2009) (citing Lyman Steel Corp. v. Ferrostaal Metals Corp., 747 F.Supp. 389, 397 (N.D. Ohio 1990)) (voluntarily filing a lawsuit, where the facts similarly arise from the same series of events as another lawsuit can be deemed another indication of purposeful availment of the forum); see also Powervip, Inc. v. Satic Control Components, Inc., 2009 WL 152106 at * 8 (W.D. Mich. 2009).

Cross argues this action arises from the prior actions filed by Defendants because the alleged Facebook postings by Defendants occurred in response to the vehicle crashes that are the subject of the other two lawsuits. Cross maintains that both this action and the two others arise from the same nucleus of operative facts because both relate to injuries suffered by Defendants - the first involving personal injuries and death, and the second involving statements directly motivated by those injuries and deaths.

Defendants, on the other hand, argue that Cross's claims regarding Defendants' purported motivations and the timing of the allegedly defamatory statements are not found in Cross's Amended Complaint and, therefore, cannot be considered in the analysis of these motions. Defendants also contend that the two prior lawsuits are entirely unrelated in subject matter to this action.

The Amended Complaint says nothing about the vehicle crash in Texas or the deaths of Baseman's and Taylor's sons. The allegedly false posts cited in the Amended Complaint and attributed to Baseman and Taylor (Doc. No. 14 at ¶¶ 36-37) say nothing about and have nothing to do with their sons' wrongful deaths. Cross's assertions that any posts by Baseman and/or Taylor

were a direct result of or motivated by the Texas crash are speculative and beyond the pleadings in this case, so the Court cannot consider them. The Court finds that this action does not arise from the same nucleus of operative facts as Baseman's and Taylor's wrongful death action, so Cross has not shown that Baseman and Taylor have waived their personal jurisdiction defenses. Neither has Cross established the second part of the three-part test cited above.

As to Rodgers, contrary to Rodgers' assertion in his Memorandum, the Amended Complaint specifically describes the vehicle crash in Utah in which Rodgers was injured. (Doc. No. 14 at ¶¶ 14-16.) The Amended Complaint also alleges that Rodgers wrote a false and defamatory Facebook post "[s]hortly after the accident's [sic] occurred." (Doc. No. 14 at ¶ 17.) Two of the alleged Facebook posts attributed to Rodgers in the Amended Complaint specifically deal with the aftermath of the vehicle crash. (Id. at ¶ 27 at 10-11.) Viewing the pleadings in the light most favorable to Cross, as the Court must do, there is a connection between this action and Rodgers' prior action in this Court.

For purposes of the third element of minimum contacts, a plaintiff must also show that the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Where the first two criteria are met, an inference of reasonableness arises and only the unusual case will not meet the substantial connection criterion. Schneider, 669 F.3d at 703 (6th Cir. 2012). Here, Rodgers was hired by and worked for Cross's company, which is headquartered in Tennessee. Rodgers sued Cross in Tennessee for injuries suffered while working for Cross's Tennessee company. Cross's Amended Complaint in this action alleges that Rodgers' false and defamatory statements are a direct

6

result of his working for Cross and being injured while on the job. Rodgers has a substantial enough connection to Tennessee to make personal jurisdiction over him reasonable.

Baseman and Taylor, on the other hand, did not work for Cross's Tennessee company and, therefore, were not injured while working for Cross's Tennessee company. The Amended Complaint does not allege that Baseman's and Taylor's Facebook statements were a direct result of having worked for Cross's Tennessee company. Even if Cross had establish the second element, the Court finds that the acts of Baseman and Taylor do not have a substantial enough connection with Tennessee to make the exercise of jurisdiction over them reasonable under the three-part test.

(B) Website Connections

The Court must next decide whether any other connection leads to personal jurisdiction over Defendants Baseman or Taylor.[4] The Amended Complaint does not cite Defendants' Facebook activity as a basis for personal jurisdiction in this Court, but the parties argue it. Cross contends that discovery is needed to fully investigate further to find out just how far the readership of the subject Facebook pages extends. Cross did not ask for additional discovery or an evidentiary hearing in connection with these motions concerning personal jurisdiction. The Court is deciding these issues without discovery or a hearing, based on the written submissions of the parties.[5]

In this Circuit, operation of an internet website can constitute the purposeful availment of the privilege of acting in a forum state if the website is interactive to a degree that reveals

---

[4] Having already found a basis for personal jurisdiction over Rodgers, the Court will address only Baseman and Taylor.

[5] When considering a motion for lack of personal jurisdiction, a court has three choices: (1) rule on the motion based on the affidavits submitted by the parties; (2) permit discovery in aid of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. Binion v. O'Neal, 95 F.Supp.3d 1055, 1057 (E.D. Mich. 2015).

specifically intended interaction with residents of the state. Bridgeport Music, Inc. v. Still 'N The Water Publishing, 327 F.3d 472, 483 (6th Cir. 2003). In evaluating whether a defendant's contact with the forum state constituted purposeful availment, the Sixth Circuit has used a "sliding scale" approach, which distinguishes between (1) interactive websites, where the defendant establishes repeated online contacts with residents of the forum state; and (2) passive websites, where the defendant merely posts information on the site. Neogen Corp. v. Neo Geo Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002); Cadle Co. v. Schlichtmann, 123 Fed. Appx. 675, 678 (6th Cir. 2005).[6]

The maintenance of a website, in and of itself, does not constitute the purposeful availment of the privilege to act in a state. Neogen, 282 F.2d at 890. An internet website by its very nature can be accessed internationally. Id. The level of contact with a state that occurs simply from the fact of a website's availability on the internet is an "attenuated" contact that falls short of purposeful availment. Id.; One Media IP Ltd. v. S.A.A.R. SrL., 122 F.Supp.3d 705, 717 (M.D. Tenn. 2015).

Courts in this Circuit have held that social media websites do not lend themselves to the sliding scale test because the defendants do not own or operate the websites, but they are merely visitors or account holders. Binion v. O'Neal, 95 F.Supp.3d 1055, 1060 (E.D. Mich. 2015). In addition, social media websites are generally not used primarily to conduct business. Id. In Binion, the defendant posted offensive pictures of himself and the plaintiff on Instagram and Twitter, and

---

[6] The Sixth Circuit has identified three levels of interactivity for internet websites: (1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer. Silent Events, Inc. v. Quiet Events, Inc., 2016 WL 4466657 at * 2 (M.D. Tenn. Aug. 24, 2016) (citing See, Inc. v. Imago Eyewear, Ltd., 167 Fed. App'x 518, 522 (6th Cir. 2006)).

the court held that those postings did not constitute the defendant's purposefully availing himself of the forum. Binion, 95 F.Supp.3d at 1060.

Courts in the Sixth Circuit have also used the "effects test" set forth in Calder v. Jones, 104 S.Ct. 1482 (1984), to analyze personal jurisdiction in a case involving alleged defamation. Under that test, a plaintiff must establish that (1) the defendant intentionally committed a tortious action that was expressly aimed for dissemination in the forum state, and (2) the brunt of the effects of the actions are felt within the forum state. Binion, 95 F.Supp.3d at 1060; Lifestyle Lift Holding Co., Inc. v. Prendiville, 768 F.Supp.2d 929, 937 (E.D. Mich. 2011). Injury to a forum resident is not enough under this test, and personal jurisdiction is not found in the absence of "something more" to demonstrate that the defendant specifically directed his activity toward the forum state. Binion, 95 F.Supp.3d at 1060.[7]

Cross cannot establish that Baseman's and Taylor's posts were expressly aimed for dissemination in Tennessee. The comments at issue were posted for the entire Facebook audience on an international website. The Facebook posts were interactive only to the extent that a reader could like, share or comment on the postings. "The opportunity to comment on, 'like,' or 'share' Facebook posts does very little to move defendants' page farther up the continuum from passive to interactive." Thomas v. Barrett, 2012 WL 2952188 at * 4 (W.D. Mich. July 19, 2012). The Thomas court held that Facebook "does little more than make information available" and qualifies as a passive site. Id.

---

[7] The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way. Walden, 134 U.S. at 1125.

9

In any event, any injury suffered by Cross as a result of these Facebook posts extended beyond the State of Tennessee as well. Cross himself argues that the false Facebook posts are aimed at following Cross and MDRST around the country. (Doc. No. 49 at 10.)

The Court finds that the Facebook postings allegedly made by Baseman and Taylor were not directed to Tennessee and are not sufficient to subject them to personal jurisdiction in Tennessee.

(3) Civil Conspiracy

Finally, Cross contends that Rodgers, Baseman and Taylor joined together in a clear and common design to post false and defamatory statements about Cross to cause him and his business harm. (Doc. No. 14 at 25.) Cross does not allege, in his Amended Complaint, that civil conspiracy is a basis for personal jurisdiction over these Defendants, but he has argued it in response to Defendants' motions.

Under this "conspiracy theory" of personal jurisdiction, when (1) two or more persons conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum. Chenault v. Walker, 36 S.W.3d 45, 53 (Tenn. 2001). The court in Chenault held that the conspiracy theory of personal jurisdiction, premised on the basic principles of conspiracy liability, fits within the Tennessee long-arm statute and comports with due process. Id. at 54-55.

The conspiracy theory of personal jurisdiction is based on two principles: (1) that the acts of one coconspirator are attributable to all co-conspirators; and (2) that the constitutional requirement of minimum contacts between non-residential defendants and the forum can be met if there is a substantial connection between the forum and a conspiracy entered into by such defendants. First Community Bank v. First Tennessee Bank, 489 S.W.3d 369, 395 (Tenn. 2015).

Baseman argues that a conspiracy theory of jurisdiction requires that at least one co-conspirator be subject to personal jurisdiction in Tennessee, and none of these Defendants is. The Court, having found that Rodgers is subject to personal jurisdiction here, need not address that argument. Secondly, Baseman argues that Cross has not pled the claim of civil conspiracy with the required degree of specificity. Conspiracy claims must be pled with some degree of specificity, and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. Bickerstaff v. Lucarelli, 830 F.3d 388, 400 (6th Cir. 2016).

A conspiracy is defined as "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." First Community Bank, 489 S.W.3d at 396; Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001). Each conspirator must have the intent to accomplish the common purpose, and each must know of the other's intent. Pressman v. Franklin Nat'l Bank, 384 F.3d 182, 188 (6th Cir. 2004). Each conspirator is liable for the damage caused by the other. Brown, 42 S.W.3d at 67. Civil conspiracies may be established by circumstantial evidence, but that evidence must create more than a suspicion or conjecture that a conspiracy exists. First Community Bank, 489 S.W.3d at 396. It must enable reasonable persons to infer that two or more persons jointly assented to accomplish the conspiracy. Id.

Cross's Amended Complaint alleges that there was a clear and common design among Rodgers, Baseman and Taylor and Doe Defendants to post false and defamatory statements about Cross to cause him and his business harm. (Doc. No. 14 at 25.) Cross also alleges that there was a concerted action accomplished by unlawful libelous statements being posted and shared almost daily on Facebook. Id. Cross does not allege facts indicating how this "concerted action" came about. His Amended Complaint alleges that Rodgers, Baseman and Taylor live in three different states. He does not allege that these Defendants knew each other, talked with each other, assented to a common plan to defame Cross, knew of the others' intent, or joined together for this purpose.

Cross has failed to state a claim for civil conspiracy with specificity, and his civil conspiracy claim will be dismissed. Thus, it cannot be a basis for personal jurisdiction over these Defendants.

(4) Judicial Economy and Convenience of the Parties

Cross argues that judicial economy and the convenience of the parties justify the Court's exercise of personal jurisdiction over these Defendants. Judicial economy and convenience of the parties are not factors to be considered in determining jurisdiction. Rather, these factors are relevant to venue and may be considered under 28 U.S.C. § 1404(a) on a motion for change of venue.

## CONCLUSION

For all these reasons, Baseman's and Taylor's Motions to Dismiss (Doc. Nos. 27 and 31) will be GRANTED, and Cross' claims against them will be DISMISSED. Rodgers' Motion to Dismiss (Doc. No. 36) will be DENIED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE